# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JAMES MORRIS,**

        Petitioner,

**v.**                                        **Civil Action No. 3:06cv26**
                                                    **(Judge Bailey)**

**JOYCE FRANCIS,**

        Respondent.

## OPINION/REPORT AND RECOMMENDATION

The *pro se* petitioner initiated this action on March 15, 2006, by filing an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241. In the petition, the petitioner challenges the events surrounding a prison disciplinary proceeding that resulted in the loss of gain time. On July 12, 2006, the undersigned conducted a preliminary review of the file and determined that summary judgment was not appropriate at that time. Therefore, the respondent was directed to show cause why the petition should not be granted. The respondent filed a response to the Court's Show Cause Order on August 2, 2006. The petitioner filed a rebuttal to the respondent's response on August 10, 2006. Additionally, on February 14, 2006, the petitioner filed a motion seeking finality of his case. In that motion, the petitioner requests that the undersigned issue a report and recommendation on the merits of his case forthwith.

## I. Factual Background

According to the incident report issued on July 16, 2003, during routine telephone monitoring, it was discovered that at approximately 1:03 p.m. the previous day, the petitioner placed a telephone call to (662) 621-1562. See Response (dckt. 7), Ex. 1 at Att. 1. During this call, the

petitioner informed the party answering the phone that he wanted to call Shaw[1] and instructed the party to make a three way call. Id. The person dialed as instructed and a three-way call was completed. Id. During the call, the petitioner advised Shaw that he was on a three-way call. Id. The petitioner was charged with violating code 297 -- Use of the Telephone for Abuses Other than Criminal Activity.

Later that night, an investigation was conducted by Officer R. Proffitt. Id. The petitioner was given a copy of the incident report and advised of his rights. Id. After acknowledging that he understood his rights, the petitioner admitted to the investigating officer that the allegations in the incident report were true, but asserted that he did not know he was not allowed to call his attorney. Id. Officer Proffitt informed the petitioner that he was not being charged for calling his attorney, but rather, for placing an unauthorized three-way call. Id. Due to the petitioner's admission, Officer Proffitt found that the report was true and correct as written and referred the report to the petitioner's Unit Disciplinary Committee ("UDC") for further action. Id.

At the petitioner's UDC hearing, the petitioner again admitted that the charge was true. Id. However, the petitioner argued that he did not read his A&O (Admission and Orientation) handbook and did not know that he could not call his lawyer in such a manner. Id. The UDC determined that the charge was true and referred the matter to a Disciplinary Hearing Officer ("DHO"). Id.

At the petitioner's disciplinary hearing, the petitioner was read the charges against him and was asked for a statement. Id. at Att. 5. The petitioner stated that Shaw was his attorney and that he "didn't know [he] couldn't do that." Id. The DHO asked the petitioner if he had received a copy

---

[1] The incident report states that the petitioner wanted the party to call a person named Shall. However, in his petition, the petitioner asserts that the party's name was actually Shaw.

of the Admission and Orientation handbook to which the petitioner replied in the affirmative. Id. However, the petitioner contended that he had never read his A&O handbook. Id.

Based on the incident report written by the reporting officer, and the petitioner's admissions, the DHO found that the petitioner had committed the prohibited act of Use of the Telephone for Abuses Other than Criminal Activity, in violation of Code 297. Id. The DHO further found that an inmate is responsible for knowing and abiding by the rules and procedures of the institution and that failing to read the A&O handbook and therefore, not knowing that certain behavior was prohibited, was not a defense to the charges. Id. Thus, the petitioner was sanctioned 30 days disciplinary segregation, disallowance of 27 days Good Conduct Time ("GCT"), and the forfeiture of 27 days non-vested GCT. Id.

## II. Petitioners' Contentions

(1) The regulation under which he was charged is ambiguous.

(2) Similarly situated inmates were charged with a less serious offense for the same conduct.

## III. Analysis

### A. General

The Federal Bureau of Prisons ("BOP") is charged with the responsibility of administering the federal prison system. See 18 U.S.C. § 4042. Included in this duty is the obligation to provide for the protection, instruction and *discipline* of all persons charged with or convicted of offenses against the United States. § 4042(a)(3). Therefore, the BOP has promulgated rules for inmate discipline. See 28 C.F.R. § 541.10, et seq.

### B. Vagueness

"[A] law is void for vagueness if its prohibitions are not clearly defined." Grayned v. City

of Rockford, 408 U.S. 104, 108 (1972). Likewise, vagueness principles are applied to prison regulations. Meyers v. Aldredge, 492 F.2d 296, 311 (3d Cir. 1974). However, in the prison context, those principles are also viewed in light of the "legitimate needs of prison administration." Id. Moreover, so as not to undermine the authority of prison officials, federal courts have generally deferred the interpretation of prison rules to prison officials, "unless fair notice was clearly lacking." Id.

Here, the petitioner asserts that the regulation under which he was charged, Code 297, is vague. Code 297 states:

> Use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number, third-party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; talking in code).

Response, Ex. 1, at Att. 5, Part 3. There is nothing vague about Code 297. It is clearly stated that circumventing the telephone monitoring procedures is considered an abuse of the telephone for reasons other than criminal activity. That section lists specific examples of actions which are considered violations of that code section, but that list is not all inclusive. Clearly, three-way calling can be used as a means to circumvent the telephone monitoring system and participation in that activity is a violation of Code 297.[2]

---

[2] In his reply to the respondent's response, the petitioner makes much out of the fact that Code 297 states that third-party calling is a violation of that code section, but not three-way calling. The undersigned is of the opinion that this a distinction without difference. As noted above, the purpose of Code 297 is to prevent inmates from circumventing the telephone monitoring system. The examples listed are not all inclusive, meaning they are not the only actions which can constitute a violation of the code. Thus, even if third-party calling and three-way calling are not the same, there is nothing in the regulations preventing an inmate from being charged with a violation of Code 297 when he utilizes a three-way call. In addition, it appears as if the BOP uses the terms third-party calling and three-way calling interchangeably. In Code 279, the BOP refers to third-party calling and third-party billing as different events, when in fact they are the really the same thing. Thus, it appears that the BOP intended to include three-way calling in its examples, when it stated third-party calling. However, the

4

C. **Equal Protection**

To be successful on an equal protection claim, the petitioner must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). If the petitioner makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id.

In this case, the petitioner asserts that other inmates who have participated in three-way calling have been charged under Code 397, instead of Code 297. The petitioner asserts that Code 397 is a moderate severity regulation which has less severe sanctions. The petitioner asserts that he should have been charged under Code 397, instead of Code 297, and that his sanctions should be modified accordingly.

Code 397 states:

Use of the telephone for abuses other than criminal activity (e.g., conference calling, possession and/or use of another inmate's PIN number, three-way calling, providing false information for preparation of a telephone list).

Response at Att. 5, Part 3.

As noted by the respondent in her response to the Court's Show Cause Order, certain behaviors are covered by both Code 297 and Code 397. Response at 10. Therefore, the reporting

---

interchangeability of these terms still does not render the statue vague as the regulation clearly contemplates that *any* attempt to circumvent the telephone monitoring system may be considered a violation of Code 279.
    Equally without merit is the petitioner's argument that he did not receive proper notice of the charges against him in violation of the Supreme Court's finding in Wolff v. McDonnell, 418 U.S. 539 (1974). See Petitioner's Rebuttal (dckt. 8) at 2-3. The petitioner's incident report clearly asserted that he was being charged with a violation of Code 297. Whether or not Code 297 specifically lists third-party calling or three-way calling as an example of a violation is inapposite. The petitioner clearly new the charge against him, a violation of Code 297, and he had ample time to prepare a defense to that charge.

officer necessarily has the discretion to decide which code an inmate will be charged under. Id. at 10-11. However, to the extent that the petitioner asserts that he has been treated differently than other inmates similarly situated, the respondent asserts that the plaintiff has failed to show that his report was the result of intentional or purposeful discrimination. In fact, the respondent asserts that based on BOP records, the petitioner cannot make such a showing.

Attached to the respondent's response is the Declaration of Deborah Livingston. Response at Ex. A. In her declaration, Ms. Livingston states that she is employed as the DHO at the Gilmer Federal Correctional Institution ("FCI-Gilmer), where the petitioner's disciplinary proceedings were held. Id. In response to this suit, Ms. Livingston conducted a review of the DHO reports for the time period between 2003 (the year in which the petitioner's incident report took place) and the present. Id. According to her review, Ms. Livingston discovered that during that time period, 25 disciplinary reports have been processed at FCI-Gilmer with respect to inmates who have made three-way calls. Id. Of the 25 reports, 24 of those inmates were charged under Code 297. Id. Only one inmate was charged under Code 397. Id. Ms. Livingston states that inmates are generally charged for this violation under the more severe Code 297 because of the security risk created when inmates attempt to circumvent the BOP's telephone monitoring system. Id.

It is clear that the petitioner in this case has failed to make a showing that his equal protection rights were violated when he was charged under Code 297, rather than Code 397. First, in support of his claims, the petitioner offers only his unsupported, self-serving, and conclusory allegations. There is simply no evidence of intentional or purposeful discrimination. Moreover, the respondent has refuted the petitioner's allegation that he has been treated differently than other inmates who are similarly situated. Indeed, it appears that inmates who participate in three-way

6

calling are routinely charged under Code 297, rather than Code 397.

## IV.  Petitioner's Motion for Finality

To the extent that the petitioner's Motion for Finality seeks a Report and Recommendation from the undersigned Magistrate Judge, the motion (dckt. 10) is **GRANTED** in light of this Opinion.

## V.  Recommendation

Based on the foregoing, the undersigned recommends that the petitioner's § 2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner.

DATED: June 25, 2007.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE